sidered, that the question on the counts, to which alone the opinion applies, was, as to the larceny at the common law. If bankers' notes payable to bearer were of the value of the stamps, and paper, and printing, because re-issuable, and therefore to be deemed valuable property, the subject of larceny, a fortiori, bank notes, for which the holder must be presumed to have given value, and which have in his hands a present value as currency, must be deemed such. There is, indeed, such a persuasive good sense in the opinion, that one feels very great difficulty in escaping from its conclusive effect in cases of the larceny of other mere choses in action. Rex v. Ransom, 2 Leach, 1090, is not so strong in its application. But Rex v. Vyse, 1 Moody, Crown Cas. 218, not only affirmed the doctrine in Rex v. Clarke, but proceeded a step farther. It was there held, that bankers' notes, so paid and re-issuable, were not only subjects of larceny at common law, but might be described in the indictment, (as in that case they in fact were described,) as "goods and chattels" of the owners.

These cases distinctly show, that in modern times, courts of justice in penal, and even in capital cases, are disposed to look at the real nature of the things stolen, and though they are in form choses in action, yet, if possessing a real value in possession, to hold them subjects of larceny. The choses in action, which were held originally not to be the subjects of larceny at the common law, were those, which had no intrinsic value, (bank notes were not then in existence,) and did not import any property in possession of the person. Can it be truly said, that bank notes, payable to bearer, and passing as currency, have no present value in possession? The present indictment has described them as of the value, which they purport on their face to promise to pay. They pass as money; they are received as money. In courts of justice, they are treated as money. On a declaration for money had and received, proof, that the defendant received bank notes for the use of the plaintiff, would be sufficient to maintain the action. They have a present value in possession, not as a mere promise to pay money, but as money of an immediate, positive, exchangeable value. It seems to us, therefore, that it would be an over refinement to hold, that they are not "personal goods" within the sense of the act of 1790. They are far better entitled to the appellation of "goods and chattels," than the paid bankers' notes in Clarke's and Vyse's Cases above mentioned.

Besides, the bank notes of the bank of the United States, by the express provisions of the charter (of which, as a public act, we are bound judicially to take notice,) are receivable in payments to the United States; and they have, therefore, a present value,

for such purposes, as cash. The same cannot be said of the other bank notes, stated in the indictment. But we are still entitled to consider them as of the present value of their respective denominations, as they are so alleged in the indictment.

If this were an indictment at common law, we might, as to the latter bank notes, have some hesitation, though the Cases of Clarke and Vyse would certainly go far to remove any technical scruples. One reason, why, at the common law, bonds and other choses in action were not deemed subjects of larceny, was, that they could not be used as property in possession by the thief, but were suable only by the owner. But bank notes, payable to bearer, are not now liable to such a consideration; for they are of present worth and value to the holder, and pass by delivery. We are now construing a public statute; and if we can perceive, that the words of the statute, in common and legal understanding, are large enough to comprehend bank notes, and that the policy of the statute applies to them with at least the same force, that it does to "personal goods" in the most restrictive sense of the terms, we are bound to give that interpretation, which carries the words to the extent of the mischief. We may say, as the judges did in Dean's Case, 2 Leach, 693, "that the statute was intended to protect every species of property," which may be deemed valuable property in possession. In the case of Rex v. Robinson, Id. 869, the judges held, that bank notes were a valuable thing under the statute of 9 Geo. I. c. 22, respecting threatening letters, which uses the words "money, venison, or other valuable thing." See, also, Rex v. Aslett, 2 Leach (4th Ed.) 958; 2 East, P. C. 1110; 2 Russ. Crimes, 1830, &c. But a private promissory note has been held not to be so. Rex v. Major, 2 Leach, 894; 2 East, P. C. 118. A distinction is here manifestly taken between choses in action, which are mere evidences of a debt, and those, which have a present value as currency. It can scarcely be doubted, that under the statute of 30 Geo. II. c. 24, respecting false pretenses, bank notes must have been deemed "money, goods, wares, or merchandises," although there is no case, now recollected, which turned on that point. See 2 East, P. C. 832.

Upon the whole, the court are of opinion, that the bank notes stated in the indictment, equally with the coin, are personal goods within the act of 1790, and therefore sentence must be passed upon the prisoner accordingly.

## Case No. 15,828.

### UNITED STATES v. MOUNTJOY.

[See Case No. 15,678.]